EX PARTE VIGIL.
[No. 2215.    Oct. 7, 1918.]
SYLLABUS BY THE COURT.

Under the provisions of section 5079, Code 1915, a parole granted a convict in the penitentiary by the prison board may be revoked, and under the statute the superintendent of the penitentiary has the power to retake and reimprison any inmate under parole, when in his judgment the terms of the parole agreement have been violated; and this he may do without notice or hearing, and for any reason which he may deem sufficient. The statute having conferred upon the superintendent of the penitentiary the power to retake and reimprison any convict so upon parole, his act of revocation is in the exercise of a sole discretion, which is not reviewable by the courts.

Application for writ of habeas corpus by J. H. Vigil against Thomas Hughes, Superintendent of the State Penitentiary. Application denied.

Ex parte Vigil, 24 N. M. 640.

H. S. Bowman, of Santa Fe, for relator.   H. S. Patton, Atty. Gen., for respondent.

## OPINION OF THE COURT.

Roberts, J.   This is an application for writ of habeas corpus by J. E. Vigil to secure his release from imprisonment in the state penitentiary.   In 1905 Vigil was tried and convicted in the district court of Colfax county of the crime. of murder in the first degree and was sentenced·to be hanged.   The death sentence was commuted to life imprisonment in the penitentiary of the territory by the then acting Governor, J. W. Raynolds.   On the 10th day of April, 1913, Vigil was released from the penitentiary under parole agreement No. 247; the said parole having been granted to him under section 5, c. 32, Laws 1909 (section 5079, Code 1915).   In his application for the writ he alleged that thereafter, on, to wit, the 29th day of October, 1913 he was taken into custody by the deputy sheriff of the county of Rio Arriba, state of New Mexico, and without hearing of any kind or nature whatsoever as to any claimed or pretended breach of the conditions of his said parole agreement was returned to the said penitentiary of the state of New Mexico, and therein confined arbitrarily, without trial, hearing, or investigation.

The return to the application filed by the warden of the penitentiary alleged that during the month of April, 1913, the petitioner committed the crime of murder in the county of Rio Arriba, state of New Mexico; that because of the commission of such offense the petitioner was arrested under verbal authority from the superintendent of the state penitentiary at Santa Fe; that he was returned to said penitentiary on the 30th day of October, 1913, and recommitted therein because of the aforesaid violation of his parole.

The question presented by the application for the writ is as to whether or not, under section 5079, Code 1915, petitioner was entitled to a hearing upon the question as to whether or not he had violated the terms of

his parole. The section, in so far as material, reads as follows:

"The said prison board shall have power to establish rules and regulations under which prisoners within the penitentiary may be allowed to go upon parole outside the penitentiary building and inclosure (one of which shall be the total abstinence from alcoholic liquors as a beverage), after having served the minimum term of his sentence, but to remain while on parole in the legal custody and under the control of the prison board and subject at any time to be taken back within the inclosure of said penitentiary; and full power to enforce such rules and regulations and to retake and reimprison any inmate so upon parole is hereby conferred upon the superintendent, whose order, certified by the clerks of the prison, with the seal of the penitentiary attached thereto, shall be a sufficient warrant for all officers named therein to authorize such officers to return to actual custody any conditionally released or paroled prisoners. It is the duty of all officers to execute said order the same as ordinary criminal process," etc.

Under this section of the statute there can be no doubt but that a parole granted under its provisions may be revoked, and that the superintendent of the penitentiary has the power to retake and reimprison any inmate upon parole, when in his judgment the terms of the parole agreement have been violated, and this he may do without notice or hearing, and for any reason which he may deem sufficient. The statute having conferred upon the superintendent of the penitentiary the power to retake and reimprison any convict so upon parole, his act of revocation is in the exercise of a sole discretion which is not reviewable by the courts. This question is settled by well-considered cases. Owen v. Smith, 89 Neb. 596, 131 N. W. 914; Kennedy's Case, 135 Mass. 48; Ex parte Horine, 11 Okl. Cr. 517, 148 Pac. 825, L. R. A. 1915F, 548. To give the statute any other construction would be to destroy the object sought to be accomplished by the Legislature. Under the statute the paroled convict is at all times in the legal custody and under the control of the prison board, and subject at any time to be taken back within the inclosure of said penitentiary. Being thus at all times in the constructive custody of the prison board, the paroled

State ex rel. Bank v. York, 24 N. M. 643.

convict is no more entitled to a hearing in the courts as to whether or not he has violated the terms of his parole agreement than he would be if he were a "trusty" employed temporarily outside the penitentiary on road work or in some other service for the state.

There might be some question under the statute as to whether the present board had the power to parole the petitioner in the first instance, he being confined under a commitment of imprisonment for life. Under the circumstances, there was, of course, no minimum sentence; but, if it be conceded that the power to parole did not exist in the case, it would not affect the petitioner's rights, for, if he was illegally given his liberty, he could be reincarcerated.

For the reasons stated, the application for the writ will be denied; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.