Taft, J.
Because of our reasons for this decision, it is not necessary to decide some of the questions raised by the parties. For example, it is not necessary to determine whether the Court of Appeals erred in dismissing the action as against the Pardon and Parole Commission. We will assume, without deciding, that petitioner is correct in his contention that, since the petitioner was being held in Summit County by the sheriff of Summit County who was served in that county, the Court of Appeals for *342 Summit County did secure personal jurisdiction over the cm mission by service on it outside Summit County. See Glass v. McCullough Transfer Co., 159 Ohio St., 505, 112 N. E. (2d), 823 But cf. State, ex rel. Barber, Pros. Atty., v. Rhodes, Aud., 165 Ohio St., 414, 136 N. E. (2d), 60. It may reasonably be arguei that, if the Court of Appeals secured personal jurisdiction ovel! the commission, then even the commission’s proper removal oi the petitioner from Summit County to the reformatory al Mansfield after the dismissal of the action by the Court of Ap| peals would not result in the case becoming moot when subse-l quently before this court on appeal from that order of dismissal!
As we view it, the decisive question of law to be determined] is whether the action of the Pardon and Parole Commission, in! declaring a paroled convict to be a parole violator before the! expiration of the maximum period of his sentence and before! his final release by the commission, is reviewable in a habeas corpus proceeding, even though such convict is returned to the] reformatory or to the penitentiary because of such action.
Outside Ohio, the authorities on this question are apparent-! ly in conflict. Annotation, 29 A. L. R. (2d), 1074.
Whether such right of review should be recognized in Ohio will depend to a substantial extent upon the interpretation of our applicable statutes.*
*343 1 In recognizing the legislative power “to dispense with notice or a hearing as part of the procedure of probation” on the revocation of a suspension of a sentence, it was said by Mr. Jus-lice Cardoza in the opinion of the court in Escoe v. Zerbst, Warden, 295 U. S., 490, 492, 79 L. Ed., 1566, 55 S. Ct., 818:
I “Probation or supension of sentence comes as an act of trace to one convicted of a crime, and may he coupled with such conditions with respect of its duration as Congress may impose.”
In our opinion, the same observation may be made with respect to a parole. Thus in Fuller v. State, 122 Ala., 32, 26 So., 146, 82 Am. St. Rep., 17, 45 L. R. A., 502, it was said with respect to a contention that a prisoner had been deprived of his constitutional rights by a summary order directing rearrest and return to custody:
*344 “This position takes no account of the fact that the perse being dealt with is a convict, that he has already been seize in a constitutional way, been confronted by his accusers and tí witnesses against him, been tried by the jury of his peers s| cured to him by the Constitution and by them convicted of criml and been sentenced to punishment therefor. In respect of thff crime and his attitude before the law after conviction of it hi is not a citizen, nor entitled to invoke the organic safeguard! which hedge about the citizen’s liberty, but he is a felon, at lar£ by the mere grace of the executive * * V’
See also Ughbanks v. Armstrong, Warden, 208 U. S., 483 52 L. Ed., 582, 28 S. Ct., 372.
*345 I A strained construction of some of the language of our statutes relating to parole might support an inference of a legisla-nte intent that there is to be a hearing before a prisoner on ■aróle is declared to be a parole violator, or at least before the Pardon and Parole Commission determines that such violator Ihould be again imprisoned. See Section 2965.21, Eevised Code. In our opinion, however, no such legislative intent should be lecognized unless it has been clearly expressed. In many instances, potential witnesses justifiably are fearful of testifying publicly against a paroled convict. Therefore, in order to determine whether or not the protection of society from such a convict requires that he be declared a parole violator and again Imprisoned, it may be necessary for the commission to rely [ipon secret investigations. State, ex rel. McQueen, Atty. Genl., v. Horton, Judge, 31 Ala. App., 71, 14 So. (2d), 557, affirmed, 244 Ala., 594, 14 So. (2d), 561. Also, if the action of the commission in determining that a paroled convict has been a parole [violator or that such a violator should be again imprisoned could not be taken until after a judicial inquiry, the resulting burdens of administration on the commission and its desire to protect the public would undoubtedly discourage the commission from granting many paroles that it otherwise would grant. See Owen v. Smith, Warden, 89 Neb., 596, 131 N. W., 914. Such a result would defeat one of the expressed purposes of the General Assembly “to assist” convicts “to become law-abiding members of society.” Section 2965.20, Eevised Code. Furthermore, as stated in the opinion in In re Anderson, 191 Ore., 409, 428, 229 P. (2d), 633, rehearing denied, 230 P. (2d), 770, 29 A. L. R. (2d), 1051:
‘ ‘ The modern release procedures whereby a paroled prisoner remains, not only in the constructive custody of a parole board or officer, but also under the guidance and observation of trained officials, are in marked contrast to the older procedures whereby a court or Governor issued a parole with little real opportunity for supervising the conduct of the prisoner. As the opportunities for intimate knowledge concerning the character and conduct of a parolee increase, the probability of informed action in granting or revoking the parole likewise increases and the necessity of the judicial type of hearing accordingly decreases.”
*346 There are statutory expressions which clearly indicate B legislative intent that a convict should be on parole only wheB his freedom would be consistent with the protection, welfare aifl security of society. Section 2965.09, Revised Code. It is afl parent that the General Assembly expressly regarded such prfl tection, welfare and security as of far more importance thfl even the temporary freedom on parole of any convicted felon. B
There is no express statutory requirement of any hearifM before the commission declares a parolee to be a violator, an* where he is a violator, he may be arrested forthwith. AlsM there is no apparent limitation provided with respect to the aiB thority and power of the commission to determine that a parolB violator should be imprisoned. Section 2965.21, Revised Cod* In contrast there are some limitations on the authority of thl commission to parole a convict. Sections 2965.18 and 2965.2* Revised Code. I
Under our statutes, one convicted of a felony does not ceasl to be a convicted felon when he is paroled. There is no “remisl sion of penalty” as there is with respect to a pardon. Subdii vision (B) of Section 2965.01, Revised Code. As our statute! indicate, when a person is paroled, he is thereby merely refl leased from confinement in a penal or reformatory institution.! While on parole, he still remains “in the legal custody of the] Department of Mental Hygiene and Correction and under the] control of the commission.” Subdivision (E) of Section 2965.1 01, Revised Code. His position, though usually more desirable, is in substance similar to that of a prisoner in a penal or reformatory institution who, because of good behavior, may, as a so-called “trusty,” be allowed temporarily to leave the confines of the institution, but who is obviously, while enjoying that privilege, still within the legal custody and under the control of the head of that institution. It would hardly be contended that such a prisoner would be entitled to any hearing because of a determination by the head of the institution that he was no longer entitled to privileges which he had previously been accorded as a trusty. Nor could it reasonably be contended that any court should be required to review such a determination in the absence of legislation specifically providing therefor. The convicted felon is such either by reason of his plea of guilty or by *347 ason of the determination of a jury that his gnilt has been oved beyond a reasonable doubt. He does not cease to be a nvieted felon merely because he has been paroled. See Johnson v. Walls, Warden, 185 Ga., 177, 194 S. E., 380; Bunch v. Clark, Warden, 185 Ga., 179, 194 S. E., 382; Mahan v. Buchanan, 310 Ky., 832, 221 S. W. (2d), 945; and McCoy v. Harris, Warden, 108 Utah, 407, 160 P. (2d), 721. He may thereby be accorded ivileges which include a substantial degree of freedom, but r statutes do not recognize that the privileges resulting from jis parole are to be irrevocable before he has either “served e maximum term of his sentence or * * * been granted his fial release by the commission.” Section 2965.17, Revised Code.
In Ex Parte Tischler, 127 Ohio St., 404,188 N. E., 730, this ourt held that a prisoner confined in the penitentiary did not ave any right to a parole. In the opinion by Allen, J., it is tated at page 411:
“Under the law as it now exists, the safeguard for the risoner must be in the conscientious, fairminded and humane iewpoint of the Board of Parole. A discretionary duty, with reat power, is confided to the board under the statutes.”
See also State, ex rel. Newman, v. Lowery et al., Ohio Pardon and Parole Commission, 157 Ohio St., 463, 105 N. E. (2d), 643, where this court recognized that “the question of parole of prisoners” is “in the discretion of the Pardon and Parole Commission. ’ ’
If under our statutes a convict has no right to a parole, it would seem that he should have no right to contest what may be in substance a revocation of his parole (that is the commission’s declaring him to be a parole violator and determining that he should again be imprisoned) unless there is a clear statutory expression of an intent to confer such a right upon him. We find no such statutory expression.
Reference has been made to certain decisions of our Courts of Appeals indicating that one who is charged with having violated his probation is entitled to a judicial inquiry after reason-sonable notice. See State v. Skypeck, 77 Ohio App., 225, 65 N. E. (2d), 75; City of Lima v. Beer, 90 Ohio App., 524, 107 N. E. (2d), 253; and State v. Nowak, 91 Ohio App., 401, 108 N. E. (2d), 377. Without expressing any opinion as to whether this court *348 would agree with the conclusions indicated hg those decision it may be noted that there are statutory expressions from whic. a legislative intention to provide for such a hearing might be inj ferred with respect to one charged with having violated hi' probation. See Section 13452-7, G-eneral Code (now Sectioij 2951.09, Revised Code). There are no similar statutory pro' visions applicable to one claimed to be a parole violator. Fur thermore, as stated in In re Anderson, supra (191 Ore., 409) 424:
“The judicial power of a court * * * to suspend the pro nouncement of sentence and award probation or thereafter t revoke the probation and pronounce sentence is clearly distinguishable from the power of an authorized administrative body to grant or revoke a parole. When a court suspends the pronouncement of sentence, the judicial process has not been completed. It remains in a state of suspense; not so in the case of a prisoner who has been sentenced and imprisoned.”
Our conclusion is that the action of the commission, in declaring petitioner to be a parole violator before the expiration of the maximum period of his sentence and before he has been granted his final release by the commission, is not reviewable in a habeas corpus proceeding. It follows that the judgment of the Court of Appeals must be affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Stewabt, Bell, Matthias and HERBERT, JJ., concur.

The sections of our Revised Code so far as we regard them as pertinent to the decision of the instant case read:
Section 2965.01. “As used * * *:
“(E) ‘Parole’ means the release from confinement in any state penal or reformatory institution, by the Pardon and Parole Commission upon such terms as the commission prescribes. A prisoner on parole is in the legal custody of the Department of Mental Hygiene and Correction, and under the control of the commission.
“(G) ‘Convict’ means a person who has been convicted of a felony under the laws of this state, whether or not actually confined in a state penal or reformatory institution, unless he has been pardoned or has served his sentence.”
Section 2965.09. “The Pardon and Parole Commission may exercise its functions and duties * * * in relation to the parole of a prisoner eligible for parole, upon the initiative of the head of the institution wherein the prisoner is confined, or upon its own initiative. * * * The commission may investigate md examine, or cause the investigation and examination of prisoners con *343 fined in state penal or reformatory institutions concerning their conduct therein, their mental and moral qualities and characteristics, their knowledge of a trade or profession, their former means of livelihood, their family relationships, and any other matters affecting their fitness to be at liberty without being a threat to society.
“The commission may * * * order the parole of any prisoner, if in its judgment there is reasonable ground to believe that, if * * * the prisoner is paroled, he will be and remain at liberty without violating the law, and that the granting of such * * * parole is consistent with the welfare and security of society. * * *”
Section 2965.17. “Subject to the limitations imposed by law, the Pardon and Parole Commission may determine the time when, the period for which, and the conditions im. accordance with which any prisoner confined in a state penal or reformatory institution may be allowed to go upon parole outside the building, enclosure, and premises of the institution to which he has been committed, assigned, or transferred. When a paroled prisoner has performed all the conditions of his parole the commission shall finally release him.
“A prisoner who has served the maximum term of his sentence or who has been granted his final release by the commission, shall be restored to the rights and privileges forfeited by his conviction. * * *”
Section 2965.18. “At least three weeks before the Pardon and Parole Commission * * * grants any parole, notice of the pendency of such matter * * * shall be sent to the prosecuting attorney and the judge of the court * * * in which the indictment against the convict was found. * * * The said notice shall be published once each week for two consecutive weeks in a newspaper * * * of general circulation in said county. * * * notice of the further consideration of such matter shall be given by mail to the proper judge and *344 prosecuting attorney at least ten days before further consideration ‡ ‡ »
Section 2965.20. “Persons * * * paroled shall be supervised by the Farl don and Parole Commission and by the proper state parole and field officers The purpose of such supervision is to require them to comply with the condij tions of their * * * parole and to assist them to become law-abiding member: of society.”
Section 2965.21. “* * * a prisoner who has been paroled, who in th judgment of the Pardon and Parole Commission has violated the conditions of] his * * * parole shall be declared a violator. In the case of * * * person who has been declared a violator, the time from the date * * * of the declared violation of his * * * parole to the date of * * * return shall not be counted as a part of time or sentence served. Por violation of the conditions of a * * * parole, any parole officer having custody or charge of such violator, any sheriff * * * or police officer shall make the arrest. A person so arrested may be confined in the jail * * * until released, paroled, or removed to the proper institution. In the case of every arrested parole violator, the commission shall determine whether such arrested person shall be released upon the same conditions as the original parole or paroled upon different conditions or shall be imprisoned in a penal or reformatory institution. In the case of a determination of imprisonment, the prisoner shall be returned to the institution from which he was paroled. In the case of * * * parole, the commission shall issue its orders accordingly, and the prisoner shall be * * * paroled in accordance with such order. * * * The procedure for submitting such matters to the commission and the hearing and disposition thereof shall be governed by the rules and regulations adopted by the commission. * * *”
Section 2965.23. “A prisoner serving a sentence of imprisonment for life for a crime other than treason or murder in the first degree, or a prisoner sentenced for a minimum term or terms * * * longer than 15 years, shall become eligible for parole at the expiration of ten full years’ imprisonment.