HUFF, *alias* O'SHIELDS, *v.* ALDREDGE, sheriff.

No. 13676. April 15, 1941.

*James R. Venable, E. W. Fountain, B. J. Dantone,* and *Frank A. Bowers,* for plaintiff.

*John A. Boykin, solicitor-general, J. W. LeCraw,* and *E. A. Stephens,* for defendant.

DUCKWORTH, Justice. ■ The condition attached to the pardon has not been met by the prisoner, but he now challenges the authority of the Governor to attach that condition, and contends that even though the condition is valid it is a condition subsequent, without limitation as to time for performance, thus giving him the right to fulfill the condition at any time during the remainder of the term for which he was sentenced.

Our governmental scheme for protecting society from crime and criminals entrusts to each of the three co-ordinate departments constitutionally defined functions. The legislative department enacts laws making certain acts criminal and prescribing punishment therefor. The judiciary determines by trial the question of guilt or innocence, and upon conviction imposes sentences as prescribed by law. The executive is empowered to reprieve and pardon, to commute penalties, remove disabilities, and remit sentences, after conviction. Neither can lawfully invade the sphere of the other. When the executive in the performance of his power and duty grants a pardon, neither the legislative nor the judicial department has the right or power to interfere. It has been said that when a pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eyes of the law the offender is as innocent as if he had never committed the offense. Although laws are not framed on principles of compassion for guilt, yet when mercy in her divine tenderness bestows on the transgressor the boon of forgiveness, justice will pause and, forgetting the offense, bid the pardoned man go in peace. The heavy responsibility resting upon the Governor when he grants a pardon is apparent. He is compelled to rely upon representations made on behalf of the prisoner, and to repose confidence in one who has transgressed the laws of the State. It is not possible for him in every case to avoid mistakes, either in accepting as true representations made or in reposing confidence in the prisoner. He ought to have authority, when called on to discharge the dual responsibility of granting a pardon to a deserving prisoner and protecting society from the evil influences and offensive associations of unreformed criminals who

have procured a pardon by a betrayal of the Governor's confidence, to safeguard these interests by attaching conditions. The authority of the Governor to grant a full pardon is conferred by the constitution. Code, § 2-2612. The grant of a conditional pardon is of less gravity and importance than the grant of an unconditional pardon, and the authority to grant the latter necessarily embraces the authority to grant the former. The greater includes the lesser. In *Muckle* v. *Clarke,* 191 *Ga.* 202 (12 S. E. 2d, 339), this court held that the Governor had authority to attach any condition precedent or subsequent which is not illegal, immoral, or impossible of performance. Courts of other jurisdictions have also sustained the authority of the pardoning power to attach such conditions. In re Conditional Discharge of Convicts, 73 Vt. 414 (51 Atl. 10, 56 L. R. A. 658); Pagano *v.* Bechly, 211 Iowa, 1294 (232 N. W. 798). The condition attached to the pardon in the present case not being illegal, immoral, or impossible of performance, it is valid, and the Governor had the constitutional authority to attach the same.

■ Where the statutes make no provision for the Governor to determine whether or not there has been a violation of the conditions of the pardon, and where such authority is not expressly reserved in the pardon, the Governor is without authority to inquire into or pass on such issues, or to order the rearrest of the prisoner, or the execution of the original sentence. In such a case the prisoner is entitled to a hearing before a court. 20 R. C. L. 572, § 60. If such authority is conferred by law or reserved in the pardon, the Governor may exercise it. 20 R. C. L. 573, § 61.' These rules apply only to conditions subsequent, since there can be no pardon until all conditions precedent are satisfied. In the present case the pardon made no such reservation, and the statutes of this State confer no such authority upon the Governor. These rules of law together with the facts in this case are illuminating on the question whether the condition stated in the pardon is precedent or subsequent. The pardon shows, that, despite the representations made by the Prison Commission that the prisoner had been paroled because of his youth, that his conduct was good, that he had made application for service in the C. C. C., and that this application would possibly be accepted if the prisoner was granted a pardon, the Governor was not entirely convinced. He could have granted

an unconditional pardon, but he refused to do so. By specifying the condition the Governor in effect said to the prisoner, I am not convinced that the representations are true, but if you can establish their truth I will grant the pardon. Obviously the Governor attached much importance to the condition; else he would not have made it the determining factor as to whether or not a pardon would be granted. He did not consider the prisoner worthy of a pardon unless the truth of these representations could be established by the prisoner's fulfilling the conditions stipulated. Being thus deeply concerned about the fulfillment of the condition, would not the Governor have reserved authority in himself, by the provisions of the pardon, to determine whether or not it had been satisfied if the condition was subsequent rather than precedent The fact that the prisoner had already been discharged from the State prison and was enjoying full liberty under a parole previously granted compels the conclusion that neither he nor the Governor intended that the pardon should operate as a means of discharging him from confinement in prison pending the satisfaction of the condition of the pardon. While the power to attach conditions precedent might authorize the Governor to order the prisoner's release for a time sufficient to enable him to meet the condition, it could hardly be held that the Governor could for such purpose require his indefinite release from the prison where he was serving a legally imposed sentence. This would constitute an unauthorized interference by the executive with the orderly functions of the judiciary.

The authority of the Governor to act in the case after the court has performed its functions by imposing sentence is found in the constitution (Code, § 2-2612) ; and while it is supreme, it is clearly defined and is strictly limited to the grant of reprieves and pardons, commutation of penalties, removal of disabilities, and remitting any part of a sentence. The constitution does not empower the Governor, without attempting to perform either of these functions, but solely as a preliminary to the performance of a pardon, to thus set free one serving a sentence regularly imposed. This pardon fixes no time within which the condition must be met. As related to a condition precedent, a time limit is unimportant since the status of the prisoner is unchanged and the pardon is inoperative until all such conditions are satisfied. In the meantime the

Governor may withdraw it if he chooses. It is a mere offer to pardon, made as a matter of grace and without consideration flowing from the prisoner. For it the prisoner has paid nothing, and in it he has no rights before it has been accepted by satisfying every condition precedent. Ex parte Collins, 32 Okla. Cr. 6 (239 Pac. 693). It is in this respect similar to an offer to sell, for which there is no consideration and which has not been accepted. In *Timmons* v. *Bostwick,* 141 *Ga.* 713 (82 S. E. 29), this court held that such an offer to sell could be withdrawn before acceptance. A pardon signed by the Governor is inoperative and confers no rights upon the prisoner until it has been delivered by the Governor and accepted by the prisoner. United States *v.* Wilson, 32 U. S. (7 Pet.), 150 (8 L. ed. 640); Ex parte Powell, 73 Ala. 517 (49 Am. R. 71). The fact that the pardon in the present case was delivered to the prisoner does not show an acceptance, since the condition stipulated therein has not been met. In *Peacock* v. *Horne,* 159 *Ga.* 707, 724 (126 S. E. 813), it was said: "The mere manual transition of such a paper is one thing; delivery of the instrument as an element of a contractual obligation is a different thing. The former without mutual intent to give validity to the paper, but a mutual intent to the contrary, does not constitute delivery. Carpenter *v.* Carpenter, 141 Wis. 544, 124 N. W. 488. Delivery is a matter of intention to be gathered from all the facts. *Baxter* v. *Chapman,* 147 *Ga.* 438 (94 S. E. 544); *Willingham* v. *Smith,* 151 *Ga.* 102 (106 S. E. 117)." In that case this court held that since the parties who signed the instrument delivered it on condition that the other party sign, and the other party failed to sign it, "such transmission of the paper did not constitute its delivery by the parties who so signed it." Under this rule, the failure of the prisoner in the present case to satisfy the condition contained in the pardon caused a failure of such delivery as would make the pardon operative.

In ex parte Ray, 18 Okla. Cr. 167 (193 Pac. 635), the Governor of Oklahoma, acting upon a misconception of the facts, issued a pardon ordering the discharge of the prisoner on a date fixed, thirty days after the pardon was signed. This pardon was delivered to the prison warden, but upon discovery of the mistake, and before the date on which the pardon was to become effective, the Governor recalled it. The court held that delivery of a full pardon which

was to become effective immediately to the prison warden would constitute legal delivery to the prisoner, but that the Governor was authorized to withdraw the pardon before it became operative as a pardon, and that the parties stood in the same position as if the Governor had issued a full pardon to take effect immediately but had never delivered it, and that the convict could not claim that any benefits had accrued to him in that case. The facts in the present case are very similar in principle to those dealt with in the case last cited. There, as here, the Governor signed and delivered a document intended to become operative as a pardon at a future time. There that time was fixed at thirty days; here that time was fixed at when the prisoner was accepted in the C. C. C. camp. It might have been thirty or any other number of days in the future, depending solely upon when the event took place. There the Governor was held to have authority to withdraw the pardon at any time before the expiration of thirty days, when it would become operative. Here the Governor had authority to withdraw the pardon at any time before the occurrence of the event which was to fix the date when the pardon would become operative. In ex parte Marks, 64 Cal. 29 (28 Pac. 109, 49 Am. R. 684), a pardon was issued and delivered upon condition that the prisoner leave the State forthwith, and remain outside of the State. The prisoner did not leave the State, and was taken into custody by the warden, and sought his discharge from custody on habeas corpus, basing his case upon the pardon. The court ruled that the condition of the pardon requiring the prisoner to leave the State forthwith was a condition precedent, and that since this condition was never met the pardon never became operative and the prisoner acquired no rights thereunder. That court further said that if the condition precedent had been met, the pardon would have thereupon become operative and would have been subject only to the fulfillment of the condition subsequent which forbade his return to the State.

Although the order of the Governor dated January 23, 1939, recites that the pardon is revoked, it will be construed as a revocation of the offer to pardon, since, as seen above, there was no pardon, because the condition precedent was never satisfied. But even if this attempt by the Governor to revoke was void and of no effect, it did not remove the condition precedent; and this condition never

having been satisfied, the prisoner had no pardon. The record shows that he had violated the terms of his parole by the commission of a crime for which he served a sentence in the Federal prison, and it shows further that because of this violation the Prison Board had revoked his parole, and he was detained under the order of that board. Since under the foregoing rulings the prisoner had no pardon and his parole was properly revoked, his detention under the order from the Parole Board was legal. There is no error in the judgment remanding him to the custody of the law.     *Judgment affirmed. All the Justices concur.*